**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LAURA BRISCOE, *et al.*, | |
| Plaintiffs, | Case No. 16-cv-10294 |
| v. | |
| HEALTH CARE SERVICE CORPORATION and BLUE CROSS AND BLUE SHIELD OF ILLINOIS, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Laura Briscoe, Kristin Magierski, and Emily Adams gave birth while insured by Blue Cross and Blue Shield of Illinois (BCBSIL). Plaintiffs, on behalf of three proposed classes, allege that Defendants Health Care Service Corporation (HCSC) and BCBSIL violated the Patient Protection and Affordable Care Act (ACA) by failing to cover lactation counseling services. Plaintiffs amended their complaint in May 2017. [28]. Defendants moved to dismiss that complaint under Federal Rule of Civil Procedure 12(b)(6). [33]. For the reasons explained below, this Court partially grants and partially denies Defendants' motion.

## I. Background

### A. The ACA's Requirements

The ACA requires health plans to cover certain preventive services without imposing cost sharing. 42 U.S.C. § 300gg-13. "Cost sharing" means costs that members pay themselves, such as copayments, coinsurance, and deductibles. 29

1

C.F.R. § 2590.715-2713(a)(1).  For women, health plans must fully cover "preventive care and screenings" that the Health Resources and Services Administration (HRSA) identifies in its guidelines.  § 300gg-13(a)(4).  HRSA's guidelines require coverage during and after pregnancy for "lactation support and counseling" and "renting breastfeeding equipment."  Health Res. & Servs. Admin., *Women's Preventive Services Guidelines*, https://www.hrsa.gov/womens-guidelines/index.html (last visited Nov. 3, 2017).[1]

The ACA does not require health plans to maintain a network of lactation counselors, but plans lacking in-network providers must cover lactation counseling performed by out-of-network providers without imposing cost sharing.  45 C.F.R. § 147.130(a)(3).  Simply put, those plans must pay all expenses for out-of-network lactation services.  Plans that offer "networks of providers" must give participants some information about their providers: namely, "an Internet address (or similar contact information) for obtaining a list of network providers."  45 C.F.R. § 147.200.

## B.    Plaintiffs

Briscoe gave birth in November 2014 while insured by BCBSIL through her then-employer, the Field Museum.  [28] ¶¶ 16, 99.  She called BCBSIL to identify in-network lactation consultants, and a representative told her that BCBSIL "had no network of providers for lactation services."  *Id.* ¶ 100.  Briscoe then tried BCBSIL's online Provider Finder (PF), but could not locate an in-network provider

---

[1] HRSA updated its guidelines in December 2016.  Health Res. & Servs. Admin., *Women's Preventive Services Guidelines* (Dec. 20, 2016), https://www.hrsa.gov/womens-guidelines-2016/index.html.  This opinion refers to the older guidelines because the events at issue happened before December 2016, but the relevant provisions remain substantively the same in the new version.

because PF did not allow "lactation," "breastfeeding," or related terms as searchable provider types or specialties. *Id.* After BCBSIL's resources proved unhelpful, Briscoe independently found an International Board Certified Lactation Consultant (IBCLC) who gave her a $200 in-home consultation. *Id.* ¶¶ 101–03. When Briscoe submitted a claim for reimbursement, BCBSIL denied the lactation consultation as an excluded service. *Id.* ¶ 103. After Briscoe appealed, BCBSIL paid $160 and held her responsible for $40 in coinsurance. *Id.* ¶ 104.

Magierski gave birth in April 2016 while insured by a plan she bought directly through BCBSIL. *Id.* ¶¶ 17, 106. Magierski contacted BCBSIL twice to get a list of in-network providers for lactation services. *Id.* ¶ 107. Representatives told her that BCBSIL had no in-network lactation services providers, so she could use any provider and BCBSIL would fully cover the services. *Id.* Magierski still tried using PF to find an in-network provider, but ran into the same problems as Briscoe. *Id.* ¶ 108. Like Briscoe, she then independently found an IBCLC for an in-home consultation that cost $245.20. *Id.* ¶ 109. When Magierski submitted a claim for reimbursement, BCBSIL covered $137.59, but applied that covered amount to Magierski's out-of-network deductible, leaving her responsible for paying the full $245.20. *Id.* ¶ 110. Magierski appealed, but to no avail. *Id.* ¶ 111.

Adams gave birth in May 2016 while insured by BCBSIL through her employer, the Illinois Attorney Registration and Disciplinary Commission (ARDC). *Id.* ¶ 113; [34] at 11. Before contacting an IBCLC that her pediatrician recommended, Adams tried using PF to find an in-network lactation consultant, but

found PF as unhelpful as Briscoe and Magierski did. [28] ¶ 114. Adams then called BCBSIL to ask about providers; a representative told her that BCBSIL would reimburse her an undisclosed "allowed amount" for out-of-network lactation services because BCBSIL "had no network of providers for lactation services." *Id.* ¶ 115. So, Adams saw her pediatrician's IBCLC for an in-home lactation consultation, paid $235 out of pocket, and submitted a claim to BCBSIL for reimbursement. *Id.* ¶¶ 116–17. BCBSIL reimbursed her only $109.64, applying $27.40 to coinsurance and denying the rest of the claim as not covered (without explaining how it calculated the covered amount). *Id.* ¶ 117. BCBSIL upheld that decision when Adams appealed. *Id.* ¶ 118.

### C.    Defendants

HCSC, an independent licensee of the Blue Cross and Blue Shield Association, operates Blue Cross and Blue Shield plans in Illinois, Montana, New Mexico, Oklahoma, and Texas that serve more than 15 million members. *Id.* ¶ 19. More than 12 million of those members come from HCSC's employer-group segment. *Id.* BCBSIL is a division of HCSC. *Id.* ¶ 20. The largest health insurance company in Illinois, BCBSIL serves more than 8 million members. *Id.* HCSC operates group and individual health insurance plans within the ACA's purview. *Id.* ¶ 22. BCBSIL and other HCSC divisions offer and administer plans directly through ACA Exchanges. *Id.* ¶ 23.

## II.    Legal Standard

To survive a motion to dismiss, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so Defendants have "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint must also contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).  In evaluating a complaint, this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in Plaintiffs' favor. *Iqbal*, 556 U.S. at 678.  This Court does not, however, accept legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III.    Analysis

Plaintiffs' putative class action alleges that BCBSIL violated the ACA by denying them coverage for, and access to, lactation counseling.  Plaintiffs assert

their claims under various legal theories, including ERISA (Counts I, II, and III), the ACA's anti-discrimination provision (Count IV), and state law (Counts V and VI). Plaintiffs concede that Adams cannot pursue ERISA claims because ERISA does not apply to her plan sponsored by her government employer, the ARDC. *See* [34] at 24–25; [39] at 21 n.8. This Court dismisses Counts I, II, and III as to Adams.

Broadly, Defendants argue that Counts II through VI fail because Plaintiffs do not allege a plausible ACA violation. Defendants also attack most of Plaintiffs' claims with more targeted arguments. This Court first addresses whether Plaintiffs allege a plausible ACA violation—a necessary predicate to most of their claims—and then addresses each count of the amended complaint in turn.

### A.  Whether Plaintiffs Allege a Plausible ACA Violation

Plaintiffs claim that Defendants violated the ACA in two main ways: (1) by improperly imposing cost sharing for lactation services; and (2) by creating administrative barriers that block access to lactation services. *See* [28].[2]

### 1.  Improper Cost Sharing

Plaintiffs claim that Defendants violated the ACA by imposing cost sharing for lactation counseling services that should have been fully covered under 45 C.F.R. § 147.130(a)(3). Defendants argue that the ACA allows them to impose cost sharing for out-of-network services because their network has lactation counseling

---

[2] Among other tactics, Defendants argue that Plaintiffs' claims fail because the ACA does not require health plans to maintain a "separate network" of lactation counseling providers. *See* [34]. This Court declines to address the "separate network" argument because Plaintiffs do not allege that the ACA requires a separate network; they instead challenge whether BCBSIL's existing network satisfies the ACA (for example, because BCBSIL does not provide a list of in-network providers that offer lactation counseling). *See* [28].

providers. This Court finds that Plaintiffs state a plausible claim that Defendants violated the ACA by improperly imposing cost sharing for lactation services.

Briscoe, Adams, and Magierski each allege that BCBSIL representatives told them in varying ways that no in-network providers existed. A BCBSIL representative told Briscoe that BCBSIL "had no network of providers for lactation services," and Adams got the same message when she contacted BCBSIL. [28] ¶¶ 100, 115. Magierski heard from two representatives that BCBSIL had no in-network lactation services providers; those representatives told her that she could see any provider and BCBSIL would fully cover the lactation counseling. *Id.* ¶ 107. Each Plaintiff also found it impossible to locate in-network providers through BCBSIL's online search. *Id.* ¶¶ 100, 108, 114.

Despite what its representatives told Plaintiffs, BCBSIL imposed cost sharing on Plaintiffs' claims for lactation counseling services. Defendants agree that the ACA prohibits plans without in-network lactation counseling providers from imposing cost sharing for those services when members see out-of-network providers. [34] at 10–11. Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, *Iqbal*, 556 U.S. at 678, they adequately allege that BCBSIL had no in-network lactation counseling providers, but still imposed cost sharing on claims for those preventive services in violation of the ACA.

Defendants argue that they did nothing wrong because their provider network has lactation services providers. Maybe so, but at this stage of the case, this Court must accept the complaint's factual allegations as true. *Id.* Here,

Plaintiffs allege that BCBSIL should not have imposed cost sharing on their out-of-network claims because BCBSIL has "no network of providers for lactation services." [28] ¶ 100. Although Defendants offer evidence of lactation services providers in their network, this Court declines to consider that evidence on a motion to dismiss. Rule 12(b)(6) limits this Court's consideration to the complaint, documents attached to the complaint, documents central to the complaint (and to which the complaint refers), and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436. Under Rule 12(d), if this Court does not exclude "matters outside the pleadings," the motion becomes "one for summary judgment under Rule 56." Defendants fail to show how this Court can take judicial notice of their evidence or why that evidence otherwise qualifies as central to the complaint. As such, this Court does not consider their evidence here. Fed. R. Civ. P. 12(d).

Defendants also argue that Plaintiffs concede that BCBSIL's network has lactation counseling providers. Not so—Plaintiffs plainly allege the opposite in their amended complaint, as discussed above. All of Defendants' examples for this line of argument mirror each other, so this Court need only address one. Defendants cite paragraph 84 of the amended complaint, which includes a screenshot of information about breastfeeding counseling that HCSC allegedly posted on its website in early April 2016. The posting advises expectant and new mothers that they "*may* be able to receive breastfeeding support" at no cost "*if* [they] go to a trained, in-network provider." [28] ¶ 84 (emphasis added). The posting then tells insureds to ask their doctors to identify local providers who offer those services,

after which the insureds should either use PF or contact customer service to confirm the provider's network status. *Id.* Plaintiffs cite this posting as an example of the administrative barriers through which Defendants allegedly prevented them from accessing lactation counseling. *Id.* ¶ 85.

The conditional references in the web posting, however, fail to prove that BCBSIL actually has in-network lactation counseling providers, unless one draws several inferences in Defendants' favor. Obviously, on Defendants' Rule 12(b)(6) motion, this Court cannot construe allegations in Defendants' favor. *Iqbal*, 556 U.S. at 678. Thus, one paragraph in the amended complaint—or even a few such paragraphs—that indicates that Defendants might have stated or implied that they have in-network providers cannot override Plaintiffs' express declarations that BCBSIL, in fact, does not have in-network providers for lactation services.

## 2. Administrative Barriers

Next, Plaintiffs claim that Defendants violated the ACA by imposing "significant administrative barriers that prevent and deter women" from getting lactation counseling services. [28] ¶ 79. Namely, Plaintiffs base their claims upon "inconsistent guidance from Defendants' representatives, lack of timely responsiveness for pre-authorization or provider requests," and Defendants' failure "to provide plan participants with any list or directory that clearly discloses the in-network providers (if any) of Comprehensive Lactation Benefits." *Id.* ¶¶ 79, 95. Defendants argue that the ACA says nothing about "administrative barriers" and that Plaintiffs effectively seek to rewrite the ACA by adding new requirements. *See*

[34] at 20–24.   This Court finds that Plaintiffs state a plausible claim that Defendants violated the ACA by imposing administrative barriers that render full coverage for preventive breastfeeding services illusory.

Plaintiffs allege that Defendants make it nearly impossible for members to find in-network providers for lactation consultation services, and then impose cost-sharing on members who see out-of-network providers when they have no other viable options.   Such allegations indicate that Defendants fail to comply with the ACA's mandate that they fully cover lactation consultation services.   42 U.S.C. § 300gg-13.   Under Plaintiffs' pleading theory, which this Court accepts at this early stage of the proceedings, *Iqbal*, 556 U.S. at 678, Defendants offer illusory coverage for breastfeeding services.

As the Northern District of California recently held in a similar case, a plan does not provide "coverage" under the ACA "if a patient can't find the service" or does not know that her health plan offers the service.   *Condry v. UnitedHealth Grp., Inc.*, No. 17-cv-00183-VC, slip op. at 3 (N.D. Cal. Aug. 15, 2017).   That court rejected as "absurd" the defendant's argument that it complied with the ACA by having a few in-network lactation counseling providers—no matter how much its members struggled to identify those providers.   *Id.* (citing *Ariz. State Bd. for Charter Sch. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1009 (9th Cir. 2006) ("Well-accepted rules of statutory construction caution us that statutory interpretations which would produce absurd results are to be avoided.")).

Indeed, insurance plans that provide "illusory coverage" in other industries violate public policy; this Court sees no reason why health plans could offer illusory coverage without running afoul of the ACA. *See, e.g.*, *PNC Fin. Servs. Grp., Inc. v. Houston Cas. Co.*, 647 F. App'x 112, 119 (3d Cir. 2016) (defining an illusory plan under Pennsylvania law as one that "would not pay benefits" for a type of coverage "under any reasonably expected set of circumstances") (internal quotation marks omitted); *Cynergy, LLC v. First Am. Title Ins. Co.*, 706 F.3d 1321, 1327 (11th Cir. 2013) (Under Georgia law, "an insurance policy may not purport to offer coverage that inevitably will be defeated by one of the policy's exclusions—in other words, the policy may not offer coverage that is chimerical."); *Bethel v. Darwin Select Ins. Co.*, 735 F.3d 1035, 1040 (8th Cir. 2013) (explaining that Minnesota law applies the doctrine of illusory coverage to construe insurance contracts "so as not to be a delusion to the insured" and to avoid "functionally nonexistent" coverage) (internal quotation marks omitted); *Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.*, 949 F. Supp. 694, 699 (S.D. Ind. 1996) (an insurance plan qualifies as illusory and violates Indiana public policy when the plan "would not pay benefits" for a type of coverage "under any reasonably expected set of circumstances") (internal quotation marks omitted). Although Defendants' plans do not contain self-defeating exclusions like the examples above, the alleged administrative barriers here serve the same function as those exclusions: making it virtually impossible for insured women to obtain full coverage for breastfeeding services. *Cf. Hartford Healthcare Corp. v. Anthem Health Plans, Inc.*, No. 3:17-cv-1686, 2017 WL 4955505, at *9 (D.

Conn. Nov. 1, 2017) (dismissing ACA claims about administrative burdens for emergency services where the plaintiffs did not allege that the burdens "would affect the coverage that patients receive for emergency services," but "only the hassle associated with using those services").

Here, Defendants argue that their plans comply with the ACA because some women might stumble upon in-network lactation services providers while, for example, giving birth in a hospital. But an insurer "cannot avoid an illusory coverage problem by simply conceiving of a single hypothetical situation to which coverage would apply." *Monticello*, 949 F. Supp. at 701. The fact that some members *might* find the needle in the haystack and locate a provider despite BCBSIL's alleged administrative barriers fails to diminish Plaintiffs' claims that, overall, Defendants essentially guarantee that no women will locate in-network lactation consultation providers. Much like the facts in *Condry*, the complaint here tells a story of Defendants' failure "to make lactation counseling services meaningfully available to plan participants." *Condry*, slip op. at 4 .

To be sure, Plaintiffs do not identify any specific ACA provisions that address, for example, "inconsistent guidance" from a health plan's customer service staff or "administrative barriers" more generally. But that does not mean that the Plaintiffs seek to circumvent rules of statutory construction by grafting potentially useful (but non-existent) requirements to the ACA. *See Nestle Holdings, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 342 F.3d 801, 804 (7th Cir. 2003) (explaining that "plain statutory language governs" in statutory interpretation).

Rather, they seek to enforce the ACA's plain language, which requires Defendants to provide full coverage for preventive breastfeeding services from in-network providers, or out-of-network providers if Defendants have no in-network providers.

Of course, whether such allegations survive the discovery process and later dispositive motions remains to be seen. At summary judgment, the parties can address the precise legal contours of the ACA's coverage requirements, and the actual effect of any such barriers to coverage here (such as whether Defendants' failure to provide a list of lactation consultation providers results in functionally nonexistent coverage).[3] For now, Plaintiffs adequately allege that Defendants fail to provide meaningful coverage for preventive breastfeeding services.

## B.    Count I: Breach of Fiduciary Duty

Briscoe, on behalf of a proposed class, claims that Defendants breached their fiduciary duties and violated § 503 of ERISA by failing "to provide timely, substantive and accurate responses to requests for out-of-network benefits and/or appeals to denials of requests for out-of-network benefits." [28] ¶ 172. Briscoe brings this claim pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), which authorizes civil suits by a beneficiary "to obtain other appropriate equitable relief" to "enforce any provisions of this subchapter or the terms of the plan." Defendants argue that Briscoe fails to state a claim because she does not specify the plan terms

---

[3] The parties dispute the deference owed to FAQs about the ACA jointly issued by the Departments of Labor, Health and Human Services, and the Treasury; the FAQs say that plans and issuers must provide a separate list of lactation counseling providers within a network. Dep't of Labor, *FAQs About Affordable Care Act Implementation (Part XXIX) and Mental Health Parity Implementation* (Oct. 23, 2015), https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-xxix.pdf. Even if this Court accords no deference to the FAQs, however, Plaintiffs state a plausible ACA violation based upon the alleged failures of PF and Defendants' representatives to identify any in-network lactation consultation providers.

that Defendants breached. This Court agrees that Briscoe fails to state a claim, but for a different reason.

If Briscoe brought Count I under § 502(a)(1)(B), Defendants would be on target because that section offers "a contract remedy under the terms of the plan." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 911 (7th Cir. 2013) (internal quotation marks omitted). But Briscoe seeks to enforce an ERISA provision, § 503, and seeks equitable relief, meaning she brings her claim under § 502(a)(3). This Court understands Defendants' confusion, given that Briscoe merely states that she brings Count I pursuant to § 502(a) without specifying which of its many subsections she relies upon. [28] ¶ 168.

That said, Briscoe fails to state a claim in Count I. ERISA § 503 provides that every employee benefit plan shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The implementing regulations require group health plans to notify participants of a denial "within a reasonable period of time" no more than 30 days after getting a claim. 29 C.F.R. § 2560.503-1(f)(2)(iii)(B). Denials must contain, among other things, the "specific reason" and the "specific plan provisions" driving the denial. *Id.* § 2560.503-1(g). To state an ERISA claim for breach of fiduciary duty, Briscoe must show that: (1) Defendants are plan fiduciaries; (2)

Defendants breached their fiduciary duties; and (3) the breach harmed her. *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005).

Based upon the current record, Briscoe fails to plead enough information to allow this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). She says only that BCBSIL initially denied her lactation consultation claim by classifying it as an excluded service, and that BCBSIL responded to her appeal—within a month of the initial denial—by covering 80% of her claim and applying the rest to coinsurance. [28] ¶ 103–04. She pleads no information establishing, for example, that the notice failed to satisfy ERISA requirements or that BCBSIL waited more than 30 days to deny her claim. Thus, she fails to establish any breach. This Court dismisses Count I.

## C.    Count II: Breach of Fiduciary Duty

Briscoe, on behalf of a proposed class, claims that Defendants breached their fiduciary duties under § 404 of ERISA by failing to fully cover out-of-network lactation services for plan participants who lacked access to in-network providers. [28] ¶ 178. Defendants offer no specific argument against Count II; they argue only that it fails along with Counts III through VI because Plaintiffs do not allege a plausible ACA violation. [34] at 17. This Court disagrees.

As this Court explained above, Plaintiffs allege plausible ACA violations. ERISA § 404 requires plan fiduciaries to discharge their duties "solely in the interest of the participants" and "with the care, skill, prudence, and diligence" of a

prudent person under the same circumstances. 29 U.S.C. § 1104(a)(1)(B). These duties mirror the common-law duties of loyalty and care. *Killian v. Concert Health Plan*, 742 F.3d 651, 664–65 (7th Cir. 2013). To state a claim for breach of fiduciary duty under ERISA, Briscoe must establish that: (1) the defendants are plan fiduciaries; (2) the defendants breached their fiduciary duties; and (3) the breach harmed her. *Brosted*, 421 F.3d at 465.

First, Briscoe alleges that Defendants qualify as plan fiduciaries because of their discretionary authority in administering the ACA's preventive service requirements. [28] ¶ 145. Defendants contest their alleged co-fiduciary status in Count III, based upon their corporate structure, but they do not contest that at least one of them is a plan fiduciary. *See* [34]. Second, Briscoe alleges that Defendants breached their fiduciary duties by improperly imposing cost sharing—an allegation this Court already found plausible. Under ERISA, benefits determinations—like the lactation services denials that Briscoe challenges—constitute fiduciary acts. *Larson*, 723 F.3d at 917. Improperly denying claims for services that should be fully covered indicates a failure to act "with the care, skill, prudence, and diligence" of a prudent person under the same circumstances. *Id.*; *see also* § 1104(a)(1)(B). Finally, Briscoe alleges that the improper cost sharing harmed her because she paid $40 for a lactation consultation claim that BCBSIL should have fully covered. [28] ¶ 105. This Court denies the motion to dismiss Count II as to Briscoe.

### D. Count III: Co-Fiduciary Breach and Knowing Breach of Trust

Briscoe, on behalf of a proposed class, seeks to hold Defendants jointly and

16

severally liable as co-fiduciaries under § 405 of ERISA for knowingly providing and administering plans that violate the ACA. [28] ¶ 182. Alternately, Briscoe claims that even if Defendants are not co-fiduciaries, they violated § 405 "as non-fiduciaries that knowingly participated in a breach of trust." *Id.* ¶ 186. Defendants argue that Count III fails because they are not co-fiduciaries, and regardless of their status, Briscoe fails to plead enough facts to support her claim. [34] at 29. This Court agrees that Briscoe fails to state a claim.

§ 405 of ERISA provides that a plan fiduciary:

shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). The amended complaint alleges that each "Defendant knowingly participated in and enabled the other Defendants' breaches of fiduciary duty by allowing Defendants to, as alleged herein, provide and administer health plans" that violated the ACA's preventive service requirements. [28] ¶ 182. Under *Iqbal*, this allegation does not suffice to state a claim for co-fiduciary liability. 556 U.S. at 678 (allegations "merely consistent" with a defendant's liability fall short of

crossing "the line between possibility and plausibility"). Briscoe pleads no facts alleging that HCSC and BCBSIL are co-fiduciaries of the same plan, and no facts showing how they allegedly violated § 405. *See* [28]. Instead, she bundles the two defendants together in a "naked assertion" and merely concludes that each enabled the other's breach of fiduciary duty. *Iqbal*, 556 U.S. at 678.

Briscoe's theory that Defendants could be held liable "as non-fiduciaries for knowingly participating in a fiduciary's breach of its duties" likewise fails because she pleads no facts to support it. [39] at 27. For example, no variation of "knowingly" appears in the amended complaint until paragraph 151, which generally alleges that Defendants knowingly participated "in breaches" of "ERISA's fiduciary responsibility provisions." This Court dismisses Count III. *See York v. Wellmark, Inc.*, No. 4:16-cv-00627-RGE-CFB, slip op. at 27–28 (S.D. Iowa Sept. 6, 2017) (dismissing a nearly identical claim against another independent licensee of the Blue Cross and Blue Shield Association for the same reason).

## E.     Count IV: Discrimination in Violation of the ACA

Plaintiffs, on behalf of proposed classes, claim that Defendants discriminated against them on the basis of their sex in violation of § 1557 of the ACA by providing "disparate levels of health benefits, and specifically ACA mandated preventive services, for breastfeeding and lactating women." [28] ¶ 196. Defendants argue that Plaintiffs fail to allege the requisite elements of a disparate-impact claim. [34] at 31. This Court agrees that Count IV fails, but based upon a different reason.

Section 1557 states that an individual:

shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity . . . . The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. §18116(a). No court of appeals has yet fully analyzed discrimination claims under § 1557, but this Court agrees with other district courts that § 1557 provides a private right of action. *See, e.g.*, *York*, slip op. at 29; *Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698 (E.D. Pa. 2015); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 848 (D.S.C. 2015); *Rumble v. Fairview Health Servs.*, No. 14-cv-2037, 2015 WL 1197415, at *7 n.3 (D. Minn. Mar. 16, 2015) ("The Court reaches this conclusion because the four civil rights statutes" that Congress "referenced and incorporated into Section 1557 permit private rights of action.").

Although these courts agree that a private right of action exists, they part ways on the appropriate standard for assessing § 1557 discrimination claims. *Rumble* concluded that § 1557 creates a "health-specific" anti-discrimination claim "subject to a singular standard, regardless of a plaintiff's protected class status." 2015 WL 1197415, at *11 (subjecting plaintiffs to different standards based upon the type of discrimination claim they bring would be "illogical"). *Gilead* and *York,* on the other hand, concluded that plaintiffs can only use the enforcement mechanism of the civil rights statute that corresponds to their claim, based upon § 1557's plain language. *Gilead*, 102 F. Supp. 3d at 698–99; *York*, slip op. at 34–35.

Plaintiffs side with *Rumble*, citing a rule promulgated by the Office for Civil Rights (OCR) in the Department of Health and Human Services: "OCR interprets Section 1557 as authorizing a private right of action for claims of disparate impact discrimination on the basis of any of the criteria enumerated in" that section. [28] ¶ 124 (quoting 81 Fed. Reg. 31375, 31440 (May 18, 2016)).

When interpreting a statute, this Court must first determine whether the statute's language is plain and unambiguous. *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). If it is, this Court must "give effect to the unambiguous statutory language" and end the inquiry there. *Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 785 (7th Cir. 2017) (internal quotation marks omitted); *United States v. Marcotte*, 835 F.3d 652, 656 (7th Cir. 2016) ("When a statute is unambiguous, our inquiry starts and stops with the text.").

This Court finds § 1557's text plain and unambiguous. Section 1557 begins by identifying the ACA's prohibited grounds for discrimination, based upon specific references to four civil-rights statutes: race (42 U.S.C. § 2000d), sex (20 U.S.C. § 1681), age (42 U.S.C. § 6102), and disability (29 U.S.C. § 794). Section 1557 then provides that the enforcement mechanisms "provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection."

If Congress intended for a single standard to apply to all § 1557 discrimination claims, repeating the references to the civil-rights statutes and expressly incorporating their distinct enforcement mechanisms would have been a

pointless (and confusing) exercise. *See Gilead*, 102 F. Supp. 3d at 698. Instead, Congress used the civil-rights statutes for two purposes: (1) to define the grounds for discrimination prohibited under the ACA; and (2) to establish the enforcement mechanisms available under the ACA for different discrimination claims. Taken together, the first two sentences of § 1557 unambiguously demonstrate Congress's intent "to import the various different standards and burdens of proof into a Section 1557 claim, depending upon the protected class at issue." *Id.* at 698–99.

Because this Court finds § 1557 plain and unambiguous, Defendant's citation to OCR's interpretation is unavailing. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843–44 (1984); *see also York*, slip op. at 33–34.

In light of the above, Title IX's enforcement mechanism applies to Plaintiffs' sex discrimination claim, so their claim fails because Title IX does not allow disparate-impact claims. Title IX "implies a private right of action to enforce its prohibition on *intentional* sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). And Title VI of the Civil Rights Act—the model for Title IX—prohibits only intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Because Title IX must be interpreted and applied the same way as Title VI, *see Cannon v. Univ. of Chi.*, 441 U.S. 677, 696 (1979), Plaintiffs may not assert Title IX discrimination claims premised upon a disparate-impact theory. *See, e.g., Doe v. Univ. of Colo., Boulder*, --- F. Supp. 3d ---, 2017 WL

2311209, at *12 n.10 (D. Colo. May 26, 2017); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 184 (D.R.I. 2016); *Tsuruta v. Augustana Univ.*, No. 4:15-cv-04150, 2015 WL 5838602, at *4 (D.S.D. Oct. 7, 2015) (Post-*Sandoval*, "a claimant cannot bring a disparate impact cause of action under Title IX."). In short, Plaintiffs cannot proceed with a disparate-impact claim under § 1557, which incorporates Title IX's enforcement mechanism for sex discrimination claims. *See York*, slip op. at 35. Here, Plaintiffs do not allege intentional discrimination on the basis of sex, and thus, this Court dismisses Count IV.

### F.     Count V: Breach of Contract

Magierski, on behalf of a proposed class, claims that Defendants breached their contract with her by denying her lactation benefits in accordance with her plan documents, which incorporate the ACA's provisions on women's preventive care by reference. [28] ¶¶ 201–05. Defendants counter that Plaintiffs do not allege a plausible ACA violation, so Count V fails. [34] at 9. But Defendants mischaracterize Count V as depending upon whether Plaintiffs allege a plausible ACA violation. Instead, Count V seeks to enforce Magierski's rights under her contract with BCBSIL.

This Court finds *York* instructive in assessing Count V. *York* denied a motion to dismiss an identical breach of contract claim against Wellmark. Slip op. at 38. Citing the McCarran-Ferguson Act of 1945 (MFA) and the ACA, *York* explained that the ACA does not preempt "consumers' traditional ability to vindicate their

rights under the insurance laws of their state."[4]   *Id.*   The MFA says that state regulation of the insurance industry serves the public interest, and thus Congress's silence on insurance issues "shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."   15 U.S.C. § 1011. The ACA empowers states to police healthcare exchanges.   42 U.S.C. § 300gg-22(a)(1).   Thus, in the traditionally state-regulated insurance realm, courts should presume that states may continue regulating when Congress has not spoken to the contrary on an issue.   *York*, slip op. at 38.

This Court agrees that the ACA does not preempt consumers like Magierski from vindicating their rights under state contract law.   *See* 42 U.S.C. § 18001 *et seq.* When courts interpret federal statutes addressing "a subject traditionally governed by state law," they must find preemption only when "it is 'the clear and manifest purpose of Congress.'"   *Gracia v. Volvo Europe Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).   The ACA contains a narrow preemption provision.   42 U.S.C. § 18041(d) ("Nothing in this title shall be construed to preempt any State law that does not prevent the application of the provisions of this title.").   Defendants do not argue (and this Court does not believe) that it applies here.   Given the absence of any indication that Congress intended the ACA to preempt breach of contract claims, and taking as

---

[4] On the same topic, *York* also explained that the ACA "does not afford consumers a private right of action under federal law."   Slip op. at 37–38.   Although that statement, at first glance, appears to contrast with *York*'s holding that § 1557 creates a private right of action, *id.* at 29, this Court interprets *York* to hold that the ACA creates a private right of action specifically for § 1557 discrimination claims, but not a general private right of action for consumers to pursue any and all claims against their insurance companies.

true Magierski's allegations that Defendants violated her plan documents by refusing to cover the full cost of lactation services, this Court finds that Magierski states a plausible claim for breach of contract. This Court denies Defendants' motion to dismiss as to Count V.

### G.    Count VI: Unjust Enrichment

Magierski, on behalf of a proposed class, claims that Defendants have been unjustly enriched by, among other things, "withholding money" owed to her and other putative class members for lactation benefits. [28] ¶ 207. Magierski fails to specify which state's law applies here; this Court presumes Illinois law, given the forum and the fact that Illinois has the most significant contacts with the parties and events in this case. *Mass. Bay Ins. Co. v. Vic Koenig Leasing Inc.*, 136 F.3d 1116, 1122 (7th Cir. 1998). Under Illinois law, however, an unjust enrichment claim fails when "the claim rests on the breach of an express contract." *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) (citing *Guinn v. Hoskins Chevrolet*, 826 N.E.2d 681, 704 (Ill. 2005)). Magierski runs squarely into this roadblock: she alleges the breach of an express contract in Count V and cites her contract with BCBSIL throughout the complaint. *See, e.g.*, [28] ¶ 98.

Magierski argues that, because she offers Count VI "in the alternative," the claim must go forward at the motion-to-dismiss stage. [39] at 29. Of course, Rule 8 allows inconsistent pleadings. *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012) (explaining that "there's no rule against inconsistent pleadings in different suits, or for that matter a single suit"). But if the parties do

not dispute a contract's existence, "a claim for unjust enrichment necessarily fails" and cannot be offered in the alternative. *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 797 (N.D. Ill. 2010) (applying Illinois law and dismissing a similar claim with prejudice). Neither side disputes that a valid contract existed between Magierski and BCBSIL, so Magierski's unjust enrichment claim fails. This Court dismisses Count VI.

## IV. Conclusion

This Court partially grants and partially denies Defendants' motion to dismiss [33]. This Court dismisses Counts IV and VI with prejudice, and Counts I, II, and III with prejudice as to Adams. This Court dismisses Counts I and III without prejudice as to Briscoe. This Court denies the motion for Count V, and for Count II as to Briscoe.

Dated: December 4, 2017

Entered:

John Robert Blakey
United States District Judge