UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA BRISCOE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION and BLUE CROSS AND BLUE SHIELD OF ILLINOIS,<br><br>Defendants. | Case No. 16-cv-10294<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Laura Briscoe, Kristin Magierski, and Emily Adams are mothers who, at the time they gave birth, Defendant Blue Cross Blue Shield of Illinois (BCBSIL) insured. They allege Defendants BCBSIL and Health Care Service Corporation (HCSC)[1] violated the Affordable Care Act (ACA) by failing to cover lactation counseling services (CLS) without cost sharing. Plaintiffs now ask this Court to certify a class. [90]. Relatedly, Defendants ask this Court to exclude the expert opinions of Ms. Nicole Peluso and Dr. Lauren Hanley, which Plaintiffs use to support their motion for class certification. [111]; [114]. For the reasons explained below, this Court grants Defendants' motions to exclude expert testimony and also denies without prejudice Plaintiffs' motion for class certification.

---

[1] HCSC is an independent licensee of Blue Cross and Blue Shield Association and operates Blue Cross and Blue Shield plans in Illinois. [50] at 4.

1

## I. BACKGROUND

This Court assumes familiarity with, and incorporates by reference, its Memorandum Opinion and Order partially granting and denying Defendants' motion to dismiss. [50]. Thus, this Court will only provide a brief factual background here.

Plaintiffs are individual mothers who obtained insurance with BCBSIL and gave birth between 2014–2016. *See* [92] (Exs. 4–6). Shortly after giving birth, they sought CLS services to help with breastfeeding. [92] (Exs. 7–9). Unable to find in-network CLS providers, Plaintiffs sought out-of-network CLS services. [92] (Ex. 4) 57:4–58:1; [92] (Ex. 5) 221:19–222:21; [92] (Ex. 6) 126:4–22; [92] (Exs. 7–9). As a result of using out-of-network providers, Defendants subsequently imposed cost sharing. [92] (Ex. 7) at 14; [92] (Ex. 8) at 14; [92] (Ex. 9) at 14.

The ACA mandates that insurers provide preventive services—including CLS care—without cost sharing. 42 U.S.C. § 300gg-13. To comply with this mandate, insurers need not maintain in-network CLS providers; but if they do not, they cannot impose cost-sharing when women use out-of-network providers. 45 C.F.R. § 147.130(a)(3). By the same token, insurers may impose cost sharing on out-of-network CLS providers so long as they maintain in-network providers without cost sharing. *Id.*; *Condry v. UnitedHealth Grp., Inc.*, No. 17-CV-00183-VC, 2019 WL 2552776, at *1 (N.D. Cal. May 23, 2019). Insurers that offer in-network providers must give participants some information about those providers. 45 C.F.R. § 147.200(a)(2)(i)(K).

Plaintiffs allege that Defendants violated the ACA's mandate in a variety of ways. They first allege Defendants' compliance with the ACA is illusory because their practices make it nearly impossible for individuals to find in-network providers. [95] at 11–14. To illustrate, Plaintiffs claim Defendants' representatives do not provide names of in-networks providers, nor does HCSC's Provider Finder Tool identify CLS providers. *Id*. at 11–14. Plaintiffs further allege BCBSIL failed to construct a network of CLS providers in the first place. *Id*. Second, Plaintiffs allege Defendants violate the ACA by utilizing overly restrictive CLS billing codes that do not capture the extent of CLS services. *Id*. at 6–9. This means that Defendants improperly impose cost sharing on some patients who receive CLS because Defendants failed to code the service as CLS. *Id*. Plaintiffs finally allege Defendants improperly impose cost sharing upon some individuals who received in-network CLS. *Id*. at 9.

Based upon these allegations, Plaintiffs now move to certify the following classes under Federal Rule of Civil Procedure 23(b)(1)(A) and 23(b)(2):

- **The ERISA Plan Class (Lactation Services Class):** All individuals who on or after August 1, 2012 (i) were or are participants in or beneficiaries of any non-grandfathered, ERISA employee welfare benefit plan sold, underwritten or administered by HCSC in the United States in its capacity as insurer or administrator; (ii) received Comprehensive Lactation Services ("CLS"); and (iii) incurred costs for a CLS claim unreimbursed by HCSC.

- **The Non-ERISA Plan Class (ACA Class):** All individuals who on or after August 1, 2012 (i) were or are participants in or beneficiaries of any non-grandfathered, non-federal health benefit plan sold, underwritten or administered by HCSC in the United States in its capacity as insurer or administrator, and (ii) received CLS for which HCSC did not provide coverage without cost-sharing; and (iii) incurred costs for a CLS claim unreimbursed by HCSC.

[90] ¶ A.

In support of their motion for class certification, Plaintiffs submit expert reports by Ms. Nicole Peluso and Dr. Lauren Hanley. [93] (Exs. 6, 9). Defendants seek to exclude their testimony under Federal Rule of Evidence 702. [111]; [114].

## II. LEGAL STANDARD

To be certified, a proposed class must first satisfy all four requirements of Rule 23(a). Fed. R. Civ. P. 23(a). Those requirements are: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). *Id.* Second, the class must also satisfy one of Rule 23(b)'s conditions. *Lacy v. Cook Cty.*, 897 F.3d 847, 864 (7th Cir. 2018). Third, the Seventh Circuit independently instructs that a class "must be sufficiently definite that its members are ascertainable." *Id.* (citing *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012)).

Unlike on a motion to dismiss, the district court may not "simply assume the truth of the matters asserted by the plaintiff." *Messner v. NorthShore Univ. HealthSystems*, 669 F.3d 802, 811 (7th Cir. 2012). Instead, the plaintiff bears the burden of proving these requirements by a preponderance of the evidence. *Priddy v. Health Care Serv. Corp.*, 870 F. 3d 657, 660 (7th Cir. 2017).

## III. ANALYSIS

### A. <u>Plaintiffs' Experts</u>

To support their motion for class certification, Plaintiffs submit expert reports by Ms. Nicole Peluso and Dr. Lauren Hanley. [93] (Exs. 6, 9). Plaintiffs retained Ms. Peluso, a lactation consultant, to provide opinions about HCSC's CLS procedure codes. [93] (Ex. 6) at 3–7. Ms. Peluso bases her testimony upon her "expertise as an International Board Certified Lactation Consultant; [her] knowledge of medical billing for perinatal-related claims; and [her] review of documents in this case." *Id.* at 7. Dr. Hanley, a practicing physician, specializes in obstetrics, gynecology, and breastfeeding medicine at Massachusetts General Hospital. [93] (Ex. 9) at 1. She also teaches at Harvard Medical School. *Id.* She testifies on CLS training, integration of CLS into primary care provider practice, the Baby Friendly Hospital Initiative, and CLS coding. *Id.* Defendants seek to exclude both experts' testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [111]; [114].

At the class certification stage, district courts need only rule upon *Daubert* motions when the challenged expert report remains critical to determining class certification. *Messner*, 669 F.3d at 812. Yet the Seventh Circuit instructed that when in doubt as to whether the report is critical, the district court should issue a *Daubert* ruling. *Id.* As such, this Court will analyze Ms. Peluso's and Dr. Hanley's testimony under *Daubert*.

An expert's testimony is admissible if: "(1) the expert testifies to valid technical, scientific, or other specialized knowledge; and (2) that testimony will assist the trier of fact." *Id.*; Fed. R. Evid. 702. The party seeking to admit the expert testimony "bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Defendants challenge that Plaintiffs' experts are not qualified in the relevant field, their opinions are unreliable, and their opinions will not assist the trier of fact. [112]; [115].

For the qualification analysis, both experts purport to be qualified based upon their personal experience. [93] (Ex. 6) at 3–7; [93] (Ex. 9) at 1–3. Here, both experts demonstrated considerable prior experience with CLS and CLS billing. [93] (Ex. 6) at 1–7; [93] (Ex. 9) at 1–3. Plaintiffs are, thus, sufficiently qualified. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (noting that courts may consider an expert's "full range of practical experience"); *see also Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 590–91 (7th Cir. 2000) (affirming the district court's determination that an expert was qualified based upon professional experience in the relevant area).

Importantly though, just because an expert is qualified, that expert must still show that his or her opinions are based upon a reliable methodology. *Lewis*, 561 F.3d 698, 705 (7th Cir. 2009) (excluding a qualified physician's testimony because even a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable"). Although the Supreme Court explained that experts may provide

6

testimony based upon personal knowledge or experience rather than scientific knowledge, it nevertheless instructed that the district court must ensure the expert's opinions and methodology are sufficiently reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

Here, Plaintiffs fail to establish the reliability as to Ms. Peluso's and Dr. Hanley's conclusions apart from merely pointing to their experience generally. [125] at 7–9; [126] at 12–13. But witnesses relying upon experience must still explain "*how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts" so that the court is not simply required to take the expert's word for it. *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (emphasis in original) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendments). Because Plaintiffs' experts fail to explain how their anecdotal experiences enabled them to reliably reach their expert conclusions, this Court determines they do not meet the *Daubert* standard. *Van v. Ford Motor Co.*, 332 F.R.D. 249, 267 (N.D. Ill. 2019) (excluding expert testimony as unreliable when there was "simply too great an analytical gap between the data and the opinion offered"). Accordingly, this Court need not consider Defendants' argument that Ms. Peluso's and Dr. Hanley's testimony does not assist the trier of fact and grants Defendants' motions to exclude, [111]; [114]. This Court now turns to Plaintiffs' motion for class certification.

B.   Plaintiffs' Motion for Class Certification

Plaintiffs' amended complaint alleges a single theory detailing how Defendants violate the ACA—they allegedly erected administrative barriers to locating an in-network provider which rendered compliance with the ACA illusory. [28]. Adding new detail to their amended complaint, Plaintiffs' motion for class certification accuses Defendants of engaging in a new range of allegedly unlawful activity. *Compare* [28], *with* [95]. Plaintiffs now assert Defendants violate the ACA's cost sharing mandate in several additional ways. Plaintiffs argue Defendants too restrictively code CLS so that some CLS procedures are not recognized and, are thus, billed with cost sharing. [95] at 6–11. Plaintiffs further allege Defendants improperly impose cost sharing upon some individuals who received in-network CLS. *Id.* at 9. This Court will accordingly consider the appropriateness of these legal theories for class certification.[2]

*1. Commonality*

Commonality remains Plaintiffs' most difficult hurdle to class certification. Rule 23(a)(2) requires the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question warrants class treatment when it "generates a common answer, such that determination of the question will 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Balderrama-Baca v. Clarence Davids & Co.*, 318 F.R.D. 603, 610 (N.D. Ill. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In other words,

---

[2] Defendants do not challenge numerosity. [99].

"the class members' claims must depend on a common contention that is 'capable of classwide resolution.'" *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 800 (7th Cir. 2017) (quoting *Wal-Mart*, 564 U.S. at 350).

Initially, Plaintiffs legal theory ostensibly presents a potential classwide practice capable of generating a common answer. Plaintiffs allege Defendants employed a general policy of not identifying in-network CLS providers and then imposing cost sharing for out-of-network care. [95] at 11–14. And courts have found commonality based upon such systemwide practices. *See, e.g.*, *Holmes v. Godinez*, 311 F.R.D. 177, 217–20 (N.D. Ill. 2015) (finding commonality based upon Illinois Department of Corrections' systemwide policies regarding accommodations for deaf and hard of hearing inmates). Moreover, even assuming some women may have stumbled upon an in-network CLS provider, the common question of whether Defendants violated the ACA by erecting administrative barriers to finding in-network providers remains. *A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 481 (D. Or. 2013) (finding commonality for a proposed class consisting of insured individuals claiming the defendant's group health plans illegally denied coverage to individuals seeking Applied Behavior Analysis despite the fact that the defendant may have properly denied some individual claims).

Similarly, Plaintiffs' theory that Defendants violate the ACA by employing overly restrictive coding to CLS, [95] at 6–9, could generate classwide answers to the question of whether Defendants comply with the ACA. *Wit v. United Behavioral Health*, 317 F.R.D. 106, 127 (N.D. Cal. 2016) (finding commonality for claims that an

insurance company breached its fiduciary duty and abused its discretion by developing overly restrictive guidelines to determine clinical coverage). In that case, the common question would be whether Defendants applied an overly restrictive coding policy systemwide, which could provide a classwide answer of whether Defendants comply with the ACA's cost sharing mandate.

Critically though, the entire proposed class does not possess commonality under Plaintiffs' case theory. Although Plaintiffs identify two system-wide practices or policies, Plaintiffs fail to advance a "standard conduct of practice that *affects the entire class.*" *Holmes*, 311 F.R.D at 217 (emphasis added). Instead, Plaintiffs' numerous theories of liability underscore the overbreadth of the proposed class as some numbers of the class were allegedly injured by one practice and other class members by a different practice. In fact, the named Plaintiffs themselves do not contend Defendants injured them by employing either overly restrictive coding or imposing cost sharing for in-network CLS services. [95] at 3–4. Thus, the fact that the even the named Plaintiffs failed to suffer two of the cited injuries further demonstrates that the class does not share a common injury (and also raises typicality problems). *McCaster*, 845 F.3d at 800–01.

Additionally, Plaintiffs' liability theory based upon Defendants imposing cost sharing on some in-network claims presents a host of individualized issues as Plaintiffs fail to present a systemwide policy explaining Defendants' decision to impose cost sharing on any given claim. [95] at 9–11. For these reasons, the class lacks commonality and cannot be certified.

10

### 2. *Other Issues*

Beyond commonality, Plaintiffs' currently constructed class presents other issues that frustrate class certification. As mentioned previously, the three class representatives did not suffer injuries stemming from overly restrictive coding or improper cost sharing for in-network claims. Therefore, they are not suited to represent a class of individuals who suffered those harms. *E. Tex. Motor Freight Sys. Inc., v. Rodriguez*, 431 U.S. 395, 403–04 (1977) (holding the Court of Appeals erred in declaring a class action when the class representatives "suffered no injury as a result of the alleged . . . practices, and they, were, therefore simply not eligible to represent a class of persons who did allegedly suffer injury").

Likewise, the proposed class members are not readily ascertainable. For one, as to individuals that received CLS but were not coded as such, Plaintiffs fail to propose a set of HCSC codes that encompasses all CLS care. Instead they argue that more coding options exist. [95] at 6–9 (noting that Dr. Hanley identified diagnosis codes "that *can* indicate the rendering of CLS") (emphasis added); [93] (Ex. 6) at 16 (noting the complexity of CLS coding); [93] (Ex. 9) at 12–19. While Plaintiffs may be correct on the merits, administratively, their motion leaves this Court in the difficult position of trying to ascertain class members whose claims Defendants should have processed as CLS but did not. *Jamie S.*, 668 F.3d at 496 ("In short, a class of unidentified but potentially IDEA-eligible disabled students is inherently too indefinite to be certified.").

Finally, the proposed class includes individual insureds who never submitted CLS claims, even though they received CLS and incurred costs. [95] at 17. Plaintiffs claim these members are easily identifiable by finding individuals who received:

> the receipt of the notice of the pendency of the Class Action published in HCSC's service areas as well as direct notice sent based on objective information in HCSC's records as to HCSC insured who had submitted a claim for a breast pump to HCSC since August 1, 2012, as the acquisition of a breast pump is directly correlated with insured who initiate breastfeeding.

[95] at 17 n.27. Even assuming this alleged correlation remains the proper criteria to identify this category of class members, the next step would still require confirmation that these women not only requested a breast pump but also sought CLS care without submitting CLS claims. This fact further renders the class "too indefinite to be certified." *Jamie S*, 668 F.3d at 496; *see also Holmes*, 311 F.R.D. at 215 (declining to include unidentified class members in the class definition because the class was not reasonably ascertainable).

In sum, the proposed class contains a host of issues that prevent this Court from certifying a class.[3]

### B. Certifying an Issue Class

Finally, this Court declines Plaintiffs' offer to certify a Rule 23(c)(4) issue class to resolve the question of "whether HCSC's coverage for CLS violated the ACA." [95]

---

[3] Plaintiffs' varied claims also pose an unnatural fit for class certification under Rule 23(b)(2). That rule permits courts to certify a class where the defendant acted on grounds that generally apply to the class such that injunctive or declaratory relief can be appropriately issued classwide. Fed. R. Civ. P. 23(b)(2). But because Plaintiffs posit that Defendants harmed the proposed class members in a variety of distinct ways, a single declaration would not efficiently provide equitable relief to each individual class member. *Holmes*, 311 F.R.D. at 223.

at 25. Rule 23(c)(4) permits the district court to allow a case to proceed as a class action with respect to only one particular issue. Fed. R. Civ. P. 23(c)(4). The rule attempts to strike a balance by allowing issues with classwide implications to be efficiently adjudicated as a class, even if other issues must be determined individually. 1 MCLAUGHLIN ON CLASS ACTIONS § 4:43 (16th ed. 2019). In this case, however, because Plaintiffs ask this Court to certify the broadly phrased issue of "whether HCSC's coverage for CLS violated the AC," an issue class would again lead to individualized inquires. For that reason, "little efficiency would be gained" by certifying a class for this question. *Clark v. Experian Info. Sols., Inc.*, 256 Fed. Appx. 818, 822 (7th Cir. 2007).

### IV. Conclusion

For the reasons explained above, Defendants' motions to exclude expert testimony, [111]; [114], are granted. Plaintiff's motion for class certification [90] is denied without prejudice.

Entered: January 21, 2020

John Robert Blakey
United States District Judge