UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA BRISCOE, *et al.*, <br><br>Plaintiffs, <br><br>v. <br><br>HEALTH CARE SERVICE CORPORATION and BLUE CROSS AND BLUE SHIELD OF ILLINOIS, <br><br>Defendants. | Case No. 16-cv-10294 <br><br> Judge John Robert Blakey |

# MEMORANDUM OPINION AND ORDER

Plaintiffs Laura Briscoe, Kristin Magierski, and Emily Adams are mothers who Defendant Blue Cross Blue Shield of Illinois (BCBSIL) insured at the time they gave birth. Plaintiffs allege that BCBSIL and co-Defendant Health Care Service Corporation (HCSC)[1] failed to cover comprehensive lactation support services (CLS) without cost sharing in violation of the Patient Protection and Affordable Care Act (ACA).

This Court denied Plaintiffs' first motion for class certification without prejudice. [138]. After narrowing their set of claims and creating subclasses, Plaintiffs filed a renewed motion for class certification. [143]. For the reasons explained below, this Court denies Plaintiffs' renewed motion for class certification.

---

[1] HCSC is an independent licensee of Blue Cross and Blue Shield Association and operates Blue Cross and Blue Shield plans in Illinois. [138] at 1 n.1.

1

**I.      Background**

This Court assumes familiarity with, and incorporates by reference, both its Memorandum Opinion and Order granting in part and denying in part Defendants' motion to dismiss [50] and its Order denying Plaintiffs' first motion for class certification [138].

This Court denied Plaintiffs' first motion for class certification citing various concerns regarding the scope of their proposed classes. [138] at 13. Plaintiffs now narrow their classes by excluding insureds who never submitted CLS claims, those receiving in-network CLS, and those whose claims included an HCSC Procedure Code incorporating subclasses. [145] at 8. Plaintiffs also introduce subclasses "to address the Court's concerns about commonality and typicality." *Id.*

Specifically, Plaintiffs move to certify the following two classes[2] and subclasses pursuant to Federal Rule of Civil Procedure 23(b)(1)(A) and 23(b)(2):

1) All persons who were insured by or participants in ERISA, non-grandfathered, and non-federal employee health benefit plans insured or administered by HCSC in the United States, who from August 1, 2012 to present received CLS, submitted the CLS claim to HCSC, and HCSC denied or imposed cost-sharing on the CLS claim.

    (a) <u>The Out-of-Network CLS Subclass</u>: All members of the ERISA Lactation Class who received CLS from an out-of-network provider.

    (b) <u>The CLS Scope Subclass</u>: All members of the ERISA Lactation Class who submitted a claim for CLS that did not include one of HCSC's Procedure Codes.

2) All persons who were insured by or participants in non-ERISA, non-grandfathered, and non-federal employee health benefit plans insured or administered by HCSC in the United States, who from August 1, 2012 to

---

[2] Because the classes outlined above are identical save for their ERISA distinction, this Court need only analyze certification of the newly formed subclasses.

2

>  present received CLS, submitted the CLS claim to HCSC, and HCSC denied or imposed cost-sharing on the CLS claim.
>
>  (a) <u>The Out-of-Network CLS Subclass</u>: All members of the Non-ERISA Lactation Class who received CLS from an out-of-network provider.
>
>  (b) <u>The CLS Scope Subclass</u>: All members of the Non-ERISA Lactation Class who submitted a claim for CLS that did not include one of HCSC's Procedure Codes.

[143] at 2; [145] at 16. Plaintiffs request both declaratory and injunctive relief, including an order reprocessing the out-of-network claims. [145] at 16–17.

In the first order denying class certification, this Court also considered Defendants' motion to exclude expert testimony from Ms. Nicole Peluso and Dr. Lauren Hanley regarding CLS procedure codes, pursuant to Federal Rule of Evidence 702. [138] at 4. This Court granted Defendants' motion to exclude based upon the experts' failures to demonstrate that their conclusions, based upon personal experience, arose from a reliable methodology. *Id.* at 7. This Court later denied Plaintiff's motion for reconsideration regarding the excluded testimony. [185].

## II.   Legal Standard

A proposed class must first satisfy all four requirements of Rule 23(a) to demonstrate certifiability. Fed. R. Civ. P. 23(a). Rule 23(a) requires that: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). *Id.* Second, the class must

also satisfy one of Rule 23(b)'s conditions. *Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2018). Third, the Seventh Circuit independently instructs that a class "must be sufficiently definite that its members are ascertainable." *Id.* (citing *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012)).

Unlike on a motion to dismiss, the district court may not "simply assume the truth of the matters asserted by the plaintiff." *Messner v. NorthShore Univ. HealthSystems*, 669 F.3d 802, 811 (7th Cir. 2012). Instead, the plaintiff bears the burden of proving these requirements by a preponderance of the evidence. *Priddy v. Health Care Serv. Corp.*, 870 F. 3d 657, 660 (7th Cir. 2017); *Van v. Ford Motor Co.*, 332 F.R.D. 249, 264 (N.D. Ill. 2019).

### III. Analysis

#### A. Standing

Initially, Defendants argue that the named Plaintiffs lack Article III standing to seek prospective injunctive relief. [163] at 28–29. Courts consider standing a threshold question in every federal case. *Cook County v. Wolf*, 962 F.3d 208, 218 (7th Cir. 2020); *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). In the class action context, plaintiffs seeking to represent a class must possess standing themselves; that is, "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (quoting *Allee v. Medrano*, 416 U.S. 802, 829 (1974) (Burger, C.J., dissenting)).

4

To assert standing for injunctive relief, a plaintiff must show that she "is under an actual or imminent threat of suffering a concrete and particularized injury-in-fact; that this injury is fairly traceable to the defendant's conduct; and that it is likely that a favorable judicial decision will prevent or redress the injury." *Wolf*, 962 F.3d at 218. And unlike money damages, "past injury alone is insufficient to establish standing for purposes of prospective injunctive relief" unless accompanied by "continuing, present adverse effects." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (internal quotations and citations omitted).

Defendants contend that the named Plaintiffs fail to show the immediacy and likelihood of future injury necessary to establish standing for prospective injunctive relief because: (1) two of the named Plaintiffs are no longer plan members; and (2) the third named Plaintiff has not offered any evidence that she will seek lactation services in the future, despite remaining a plan member. [163] at 28–29. Plaintiffs counter only that the third named Plaintiff testified that she forewent lactation services for a second child because she did not want to incur out-of-pocket costs again. [170] at 18. Even so, nothing in her testimony suggests that she faces any "real and immediate threat of future injury" necessary to establish standing for prospective injunctive relief. *Simic*, 851 F.3d at 738. Rather, her testimony demonstrates that her injuries remain in the past. This Court thus agrees with Defendants that Plaintiffs lack standing to seek prospective injunctive relief. *See Simic*, 851 F.3d at 738; *see also, e.g., Condry v. UnitedHealth Grp., Inc.*, No. 17-CV-00183-VC, 2019 WL 2552776, at *2 (N.D. Cal. May 23, 2019) (plaintiffs lacked standing to assert

5

prospective injunctive relief against insurer where they were no longer plan members).

Nevertheless, Plaintiffs seek not only prospective injunctive relief, but also *retrospective* injunctive relief by asking this Court to order Defendants to reprocess past denied claims. [145] at 17. Courts recognize that plaintiffs possess standing to seek a retrospective injunction in the form of a reprocessing order because: (1) Plaintiffs allege an injury-in-fact in the form of deprivation of health benefits to which they were entitled; (2) a causal connection exists between the injury Plaintiffs complain of—that is, Defendants' refusal to cover costs; and (3) it is likely, as opposed to speculative, that a reprocessing order will redress Plaintiffs' injuries. *See Meidl v. Aetna, Inc.*, No. 15-CV-1319 (JCH), 2017 WL 1831916, at *6 (D. Conn. May 4, 2017); *see also Condry*, 2019 WL 2552776, at *2. Because Plaintiffs possess standing to pursue retrospective injunctive relief, this Court turns to the merits of the parties' arguments.

### B. Out-of-Network CLS Subclass

Defendants first challenge Plaintiff's out-of-network CLS subclass. This proposed subclass encompasses out-of-network CLS claims where Defendants either denied the claim or imposed cost-sharing. [145] at 16 (defining subclass as "All members of the [ERISA/Non-ERISA] Lactation Class who received CLS from an out-of-network provider").

Defendants primarily challenge commonality, arguing that Plaintiffs fail to articulate a uniform policy capable of subclass-wide resolution. [163] at 20–25. Class

6

certification requires questions of law or fact "common to the class." Fed. R. Civ. P. 23(a)(2). This common contention must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As discussed in this Court's prior order, courts may find commonality based upon systemwide practices. [138] at 9 (citing *Holmes v. Godinez*, 311 F.R.D. 177, 217–20 (N.D. Ill. 2015)). In such cases, however, "superficial common questions—like whether each class member shares a characteristic or 'suffered a violation of the same provision of law'—are not enough to establish commonality." *Van v. Ford Motor Co.*, 332 F.R.D. 249, 276 (N.D. Ill. 2019) (citing *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012)). Rather, class members must "have suffered the same injury." *Jamie S.*, 668 F.3d at 497 (internal quotation marks and citation omitted).

In *Condry v. UnitedHealth Group, Inc.*, a case similar to this one, the court considered certification of a putative class alleging a uniform policy of imposing cost-sharing and denying coverage to out-of-network CLS claims after plaintiffs were unable to locate in-network providers. No. 17-CV-00183-VC, 2019 WL 7050114, at *2 (N.D. Cal. Dec. 23, 2019). In denying class certification, the court emphasized that despite the alleged policy, its inconsistent application toward out-of-network claims rendered the class incapable of uniform resolution. *Id.* at *3. The court relied heavily upon evidence that "roughly 88 percent of the claims were partially or fully denied," meaning "that roughly 12 percent of them were fully granted." *Id.* at *3. As the court

7

reasoned, this evidence highlighted the problem with commonality: "If [the insurer] applied a uniform policy to all these claims—and if the uniform policy was to deny out-of-network claims without regard to the availability of in-network services—why were 12 percent of the claims fully granted?" *Id.* The plaintiffs left the court only to "speculate" on that question. *Id.* In short, the evidence suggesting generally inconsistent practices toward out-of-network claims foreclosed the necessary uniform policy establishing commonality. *Id.*

The commonality problems highlighted by the court in *Condry* similarly exist here. Although Plaintiffs' proposed subclass includes only those individuals who submitted out-of-network claims which Defendants then denied or for which Defendants imposed cost-sharing, [145] at 16, they must still set forth "significant proof" that Defendants employed a uniform, system-wide policy giving rise to commonality, *Holmes*, 311 F.R.D. at 217 (citing *Dukes*, 564 U.S. at 353; *Jamie S.*, 668 F.3d at 498). Plaintiffs assert that Defendants employed a uniform policy of imposing cost sharing or denying coverage to out-of-network claims, despite the alleged inaccessibility of in-network providers. [148] at 12–13; [171] at 7. Here, though, the data shows that Defendants actually paid roughly 30 percent of out-of-network claims without cost-sharing. [160] at 21; [162-7] at 3. As in *Condry*, that begs the question: if Defendants employed a uniform policy to deny or impose cost-sharing on out-of-network claims regardless of the availability of in-network services, why then did they fully pay roughly 30 percent of those out-of-network claims without cost-sharing?

8

Hypothetically, the data may reflect that Defendants denied coverage or imposed cost-sharing upon 70 percent of individuals submitting CLS claims regardless of the availability of in-network providers, while 30% of individuals received full payment for reasons unrelated to in-network provider access. Because this hypothetical practice would reflect a uniform policy of denying coverage or imposing cost-sharing regardless of in-network availability, Plaintiffs might be able to establish commonality on this basis. But Plaintiffs produce no evidence showing that this practice actually occurred on a uniform basis. Thus, this hypothetical practice remains only one possibility of many giving rise to the significant proportion of out-of-network claims fully covered. *See Condry*, 2019 WL 7050114, at *2–3; *cf. Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (commonality turns on finding that the defendant engaged in standardized *conduct*).

Instead of submitting evidence showing consistent disregard for the availability of in-network providers, Plaintiffs repeatedly focus on the existence of written policy itself as a basis for establishing commonality. *See, e.g.*, [171] at 5, 6, 7, 9, 14. Specifically, Plaintiffs point to Defendants' written policy of providing coverage for CLS services without cost-sharing only when the insured: (1) obtains treatment by a network provider; and (2) submits a bill reflecting one of HCSC's limited procedure codes. [145] at 7; [170] at 8. Problematic as this policy might be under the ACA, Plaintiffs cannot rely upon the existence of this uniform written policy alone to establish commonality where they lack evidence demonstrating the commonality of Defendants' conduct toward class members. *McCaster v. Darden Rests., Inc.*, 845 F.3d

9

794, 800 (7th Cir. 2017) (plaintiffs seeking certification must show more than that class members suffered a violation of the same provision of the law). Indeed, they must establish that Defendants *applied* the written policy in a uniform way and that, as a result, the class members suffered a common injury. *See id.* (the commonality analysis asks whether class members suffer a common injury); *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 437 (7th Cir. 2015) (ruling that a "company-wide practice is appropriate for class challenge . . . at least where the class at issue is *affected* in a common manner, such as where there is a uniform policy or process *applied to all*" (emphasis added)); *Condry*, 2019 WL 7050114, at *3 (if the insurer "indeed applied a uniform standard or took a uniform approach to claims for out-of-network lactation services, class certification would be appropriate"). As explained above, Plaintiffs have not set forth sufficient evidence demonstrating that Defendants applied a uniform practice on a classwide basis, and thus, they fail to satisfy their burden of establishing commonality. *See Dukes*, 564 U.S. at 350. This Court thus denies certification of Plaintiffs' putative Out-of-Network CLS subclass.

    **C.**    **CLS Scope Subclass**

Defendants also challenge Plaintiffs' other proposed subclass—the CLS Scope Subclass. [145] at 16. This subclass comprises "All members of the [ERISA/Non-ERISA] Lactation Class who submitted a claim for CLS that did not include one of HCSC's Procedure Codes." *Id.*

10

Defendants oppose certification on the basis that this proposed subclass lacks both ascertainability and commonality. [160] at 25–27. Specifically, Defendants argue that Plaintiffs fail to present objective criteria from which to ascertain a subclass derived from CLS claims not coded as such. *Id.* at 26. Moreover, as they did with the Out-of-Network CLS Subclass, Defendants challenge commonality by presenting evidence undermining the existence of a uniform policy of imposing cost-shares or denying coverage based upon narrow CLS coding. *Id.* at 25.

### 1. Ascertainability

Plaintiffs initially insist that they need not demonstrate ascertainability because they seek certification under Rule 23(b)(2), not Rule 23(b)(3). [145] at 9. This argument lacks merit, as the Seventh Circuit has underscored that plaintiffs must demonstrate ascertainability "regardless of whether certification was sought under Rule 23(b)(1), (2), or (3)." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Ascertainability recognizes that plaintiffs must define a class "clearly and based on objective criteria." *Id.* at 659.

With these considerations in mind, this Court turns to the parties' substantive arguments. The ACA does not require insurance providers to adopt any specific sets of billing codes; instead, it only requires insurers to provide "comprehensive lactation services," including "counseling" and "education," without detailing any specific codes required of insurers. *Women's Preventative Services Guidelines*, Health Res. & Servs. Admin. (Dec. 2019), http://hrsa.gov/womensguidelines/index.html. Thus, even prior

11

to the exclusion of Ms. Peluso's and Dr. Hanley's testimony,[3] problems arose as to whether a class defined by billing codes would permit ascertainable members. [138] at 11. For example, Ms. Peluso's testimony identified only diagnosis codes "that *can* indicate the rendering of CLS," but ultimately failed to provide a definite universe of CLS codes. *Id.* This Court thus noted the administrative difficulties in ascertaining potential class members without CLS coding. [138] at 11. And, after excluding expert testimony from Ms. Peluso and Dr. Hanley, even less evidence exists to formulate objective standards in ascertaining class members.

Plaintiffs counter that they "have proposed a set of procedure and diagnosis codes that do encompass all CLS care." [145] at 30. In doing so, however, they continue to rely upon proposed sets of procedure and billing codes identified by Ms. Peluso and Dr. Hanley. *Id.* This Court excluded opinions from both experts because they failed to "explain how their anecdotal experiences enabled them to reliably reach their conclusions." [138] at 7. As a result, Plaintiffs fail again to show the existence of reliable, objective criteria—such as a definite universe of billing codes—that would allow this Court to ascertain members of this subclass.

### 2. Commonality

Plaintiffs encounter further fundamental issues with commonality. As discussed above, Rule 23 certification requires a showing that Defendants implemented uniform policies establishing commonality. *Holmes*, 311 F.R.D. at 217

---

[3] Ms. Peluso is a lactation consultant who Plaintiffs retained to offer expert opinions challenging the adequacy of HCSC's procedure codes. [138] at 5. Dr. Hanley teaches at Harvard Medical School and also practices as a physician specializing in obstetrics, gynecology, and breastfeeding medicine; Plaintiffs similarly retained him to testify on CLS coding. *Id.*

12

(citing *Dukes*, 564 U.S. at 353; *Jamie S.*, 668 F.3d at 498). Plaintiffs seek to establish commonality by focusing its subclass only upon individuals for which Defendants denied claims or imposed cost-sharing based upon its alleged policy of narrow coding. [145] at 16. The evidence, however, undermines Plaintiffs' allegations that Defendants employed such a uniform policy.

For instance, Defendants point to evidence indicating that "HCSC fully covered approximately 29% of claims billed with codes not included in HCSC's coding guidance, including when members informed HCSC that they received lactation services." [160] at 25; [162-7] at 4. The record thus indicates that, contrary to Plaintiffs' allegations, Defendants did not actually implement a uniform policy of rejecting claims submitted with non-HCSC procedure codes. Of course, it remains hypothetically possible that Defendants provided full coverage to 29% of claims billed with non-HCSC procedure codes for reasons unrelated to coding, while denying or imposing cost-shares on the remaining claims specifically for their failures to incorporate one of HCSC's limited procedure codes. This might reflect a uniform practice resulting in injury from overly narrow CLS coding, establishing subclass commonality. But because Plaintiffs present no such evidence that this is what happened, determining the adequacy of HCSC's coding practices instead requires individual inquiries regarding the nature of services received, *see* 29 C.F.R. § 2590.715-2713(a)(2) (coverage for office visits required only if the "primary purpose" of the visit is preventive care), as well as the reasons Defendants granted or denied coverage. Thus, as with the other proposed subclass, Plaintiffs fail to offer carry their

13

burden of establishing that Defendants engaged in standardized conduct giving rise to class members' common injuries.

In sum, mere allegations of a uniform policy of narrowly coding CLS claims remain insufficient to establish a set of claims capable of classwide resolution. Given persisting issues regarding ascertainability and commonality, this Court denies certification of Plaintiffs' CLS Scope subclass.[4]

## IV. Conclusion

For the reasons explained above, Plaintiff's renewed motion for class certification [143] is denied.

Dated: September 24, 2020

Entered:

_____
John Robert Blakey
United States District Judge

---

[4] Both parties briefly address class certification under Rule 23(b). [145] at 26; [163] at 28. Given both classes' insufficiency under Rule 23(a), however, this Court need not discuss Rule 23(b).